DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a summary judgment issued by the Huron County Court of Common Pleas in a property dispute. Because we conclude that appellants failed to provide evidence sufficient to create a question of fact with respect to their adverse possession of part of a railroad property, we affirm.
 {¶ 2} In 1852, Orrin W. Head deeded a strip of land across Huron County to the Toledo, Norfolk Cleveland Railroad Company ("Toledo, Norfolk") for a railroad right-of-way. Toledo, Norfolk built tracks on the land and, through multiple successors, maintained an operating rail line across the site until 1979, when operations ceased. In 1997, Toledo, Norfolk's successor in interest, American Premier Underwriting, Inc., f/k/a The Penn Central Corp., sold this 64 foot wide, 3,884 feet long rail corridor to the Northwest Ohio Rails to Trails Association, Inc. for the creation of a recreational trail. A year later, the association conveyed the property to appellees, six park districts which span north central Ohio.[1]
 {¶ 3} In 2003, appellants, Richard Houck, Green Acres Enterprises, Inc., Ronald Sparks, Eldon Smith,[2] and Stieber Bros., Inc., filed a complaint to quiet title to the corridor of property at issue in their favor. Appellants claimed a right to the property by adverse possession, commencing in 1979.
 {¶ 4} Following discovery, appellees moved for summary judgment, arguing that, even had appellees satisfied all of the other elements for adverse possession of the railway corridor, they had not possessed the land for 21 years. This was because a political subdivision of a state acquired the land in 1998, only 19 years after appellants claimed possession. Since time does not run against the state, adverse possession does not apply once a subdivision of the state owns the property, appellees asserted. Thus, the statutory period for adverse possession was never achieved.
 {¶ 5} Appellants responded with their own motion for summary judgment and a memorandum in opposition to appellees' motion. Appellants argued that park districts should be treated the same as the school districts or municipal corporations which, appellants argue, are excepted from the general rule that adverse possession cannot be applied against subdivisions of the state.
 {¶ 6} Moreover, appellants asserted, even if the park districts were exempt from adverse possession, at least one-third of the property was still theirs, because crops had been planted on railroad land since 1949. With this last assertion, appellants amended their prior response to an interrogatory in which they claimed possession of the land only since 1979. This amendment was supported by the affidavit of the widow of the late Eldon Smith, who averred that her husband farmed the land at the behest of a former adjacent property owner from 1949 forward.
 {¶ 7} The trial court denied appellants' motion for summary judgment and granted appellees'. From this judgment, appellants now bring this appeal. They set forth the following two assignments of error:
 {¶ 8} "I. The trial court erred in its ruling that appellee park districts cannot be divested of real property through the doctrine of adverse possession.
 {¶ 9} "II. The trial court erred in granting summary judgment in favor of appellees and against appellants where genuine questions of fact existed relating to appellants' use of property adjacent to railroad tracks and ties for more than twenty-one years."
 {¶ 10} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 11} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 67, Civ.R. 56(C).
 I. Time Does Not Run Against The State {¶ 12} Adverse possession is a common law device by which one in unauthorized possession of real property acquires legal title to that property from the titled owner. 1 Curry and Durham, Ohio Real Property and Practice (5th Ed. 1996) 276. "To acquire by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." Grace v.Koch (1998), 81 Ohio St.3d 577, syllabus. A party who fails to prove any of the elements fails to acquire title through adverse possession. Id. at 579; Pennsylvania Rd. Co. v. Donovan (1924),111 Ohio St. 341, 349-350.
 {¶ 13} In this matter, the trial court focused on the element of time of possession. Applying the general rule that adverse possession cannot be applied against the state or its subdivisions, see 1540 Columbus Corp. v. Cuyahoga Cty. (1990),68 Ohio App.3d 713, 717; Haynes v. Jones (1915),91 Ohio St. 197, at paragraph three of the syllabus, the court concluded that, even if appellants established all of the other elements of adverse possession, it could not obtain title because their time of possession was cut off in 1998, when the land was transferred to a political subdivision of the state. On the face of things, then, title to the property at issue failed to vest in appellants because they only adversely possessed the land for 19 years when it was transferred to appellee park districts.
 {¶ 14} Appellants observe here, as they did in the trial court, that unlike the state exemption from adverse possession, which is absolute, the political subdivision exception is not. In Ohio, adverse possession has been applied to municipal corporations, see LTV Steel Co. v. Cleveland (Oct. 15, 1987), 8th Dist. No. 53827, and school boards. Brown v. Bd. of Edn.,Monroeville (1969), 20 Ohio St.2d 68. Appellants argue that since school districts are much like park districts, the exception should be extended to park districts.
 {¶ 15} Adverse possession is a recognized, but not favored, manner for gaining title to land. Montieth v. Twin Falls UnitedMethodist Church (1980), 68 Ohio App.2d 219, 224. Indeed recent commentators have characterized the concept as an artifact that, "* * * has now outlasted its utility." Grace v. Koch (Oct. 9, 1996), 1st Dist. No. C-950802, see, also, (1998),81 Ohio St.3d 577, 580. We are, therefore, hesitant to enlarge this device beyond the scope of application it already occupies. This is patently what appellants seek.
 {¶ 15} The abrogation of the rule that time does not run against the state is statutory with respect to municipalities. R.C. 2305.05 expressly permits, in certain very specific circumstances, for platted, but unopened streets or alleys in a municipality, to be acquired by adverse possession. Rocco v.Fairview Park (Feb. 12, 1998), 8th Dist. No. 72263. There is no statute excepting park districts.
 {¶ 16} With respect to school districts, the sole authority for allowing adverse possession comes from Brown, supra, which has been widely criticized and held to be limited to its facts.Wyatt v. Ohio Dept. of Transp. (1993), 87 Ohio App.3d 1, 5;1540 Columbus Corp., supra, at 719.
 {¶ 17} In view of the narrowness of the authority for permitting adverse possession to any political subdivision, we decline appellants' invitation to extend this application to park districts. Consequently, for two-thirds of the land at issue, adverse possession clearly was cut off by appellees' acquisition of the land prior to the 21 years. Accordingly, appellants' first assignment of error is not well-taken.
 II. 1949 Use {¶ 17} Appellants' original complaint claimed use of the disputed property no earlier than 1979. Appellants' initial discovery responses were in conformity with this assertion. After appellees moved for summary judgment premised on state ownership, appellants responded in opposition with an affidavit from Mary Margaret Smith, widow of plaintiff Eldon Smith, who, in material part, averred that:
 {¶ 18} "4. [I]n 1949 my husband, Eldon Smith, continuously began farming and cultivating property owned by Arthur F. Henry, who owned the property prior to his son, Frederic C. Henry.
 {¶ 19} "5. That this property included the disputed railroad property up to the railroad ties of the, then active, railroad.
 {¶ 20} "6. My husband farmed the property, described in the previous paragraph, up to the railroad ties on behalf of Arthur F. Henry from 1949 through 1966.
 {¶ 21} "7. That my husband became a tenant farmer and farmed this same property, in his own right and for his own benefit, from 1966 until the property was sold to plaintiff Richard Houck in the 1990's.
 {¶ 22} "8. That in 1979, I assisted my husband and others in clearing away underbrush and overgrowth on the railroad right-of-way and that in 1979 my husband began to farm the land where the railroad tracks had previously been located."
 {¶ 23} According to appellants, widow Smith's affidavit establishes her husband's use of at least a portion of the railway corridor since 1949. Consequently, appellants argue, the 21 year period necessary for adverse possession had long since expired before the land was transferred to appellee park districts.
 {¶ 24} Although appellees characterize Mrs. Smith's affidavit as suspect, the trial court accepted it at face value. Nevertheless, the trial court concluded, Smith's averment failed to establish adverse possession for any part of the disputed land. While the 1949 beginning date might establish activity on the property in the requisite 21 years, appellants have the burden of showing all of the other elements of adverse possession. The trial court concluded that appellants had failed to show that appellants' predecessor's 1949 possession was adverse.
 {¶ 25} As stated above, for title to vest via adverse possession, the possession must be both exclusive and adverse. "Exclusive" means "sole physical occupancy." Boyer, Survey of the Law of Property (1981), 236: "* * * an assertion of ownership of the premises to the exclusion of the rights of the real owner."Gill v. Fletcher (1906), 74 Ohio St. 295, at paragraph three of the syllabus. For conduct to be considered adverse, it must be inconsistent with the owner's rights, "* * * it must deny the owner enjoyment of his property rights." Anspach v. Madden
(Nov. 1, 1985), 6th Dist. No. S-84-40.
 {¶ 26} As the trial court noted, in Barnhart v. Detroit,Toledo Ironton Rd. Co. (1929), 8 Ohio Law Abs. 22, Barnhart claimed title by adverse possession to a 20 foot strip of land along a railroad right-of-way. Barnhart presented evidence that her predecessor in interest had begun cultivating and growing crops on the land, a practice which Barnhart had continued for a period in excess of 21 years. Indeed, her predecessor at one point had fenced the land to prevent his livestock from straying onto the track.
 {¶ 27} The court granted quiet title to the land on the railroad's cross-motion and was affirmed. The appellate court stated that Barnhart's predecessor had not made manifest a claim of an intent to own the property. Neither, the court explained, was the culture of crops adverse to the railroad's interest, because during this time the railroad had no need to occupy the land, "* * * and was only interested in keeping down vegetation that would increase the fire hazard." Id. at 23.
 {¶ 28} The facts in Barnhart are indistinguishable from those presented here. Even though railroads were no longer as prone to set fires on the right-of-way in 1949, cultivation or farming along unused land on the right-of-way remained not hostile to the railroad. Moreover, as the trial court noted, nothing in widow Smith's affidavit indicates any intent by her late husband or his employers to disseise the railroad from its land. Absent evidence that appellants' predecessor asserted ownership over the land to the exclusion of the real owner and acted to deny the owner its enjoyment of property rights, appellants' claim for adverse possession fails. Accordingly, appellants' second assignment of error is not well-taken.
 {¶ 29} On consideration whereof, the judgment of the Huron County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Skow, J., concur.
[1] Appellees are the Lorain County Metro Park District; The Metro Park District of the Toledo Area; Erie Metroparks; The Wood County Park District; The Sandusky County Park District; and the Huron County Park District.
[2] On January 5, 2005, counsel for plaintiff filed a suggestion of death with respect to Eldon Smith. It does not appear that a motion for substitution pursuant to Civ.R. 25(A) was made.